UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

YAJAIRA SAAVEDRA,

                                      Plaintiff,      **THIRD AMENDED COMPLAINT**

       -against-

                                                           19 Civ. 7491 (JPC)

THE CITY OF NEW YORK, DET. EDGAR CLASES,
DET. DONALD SEHL, SGT. ALBERTO GONZALEZ,    **JURY TRIAL DEMANDED**
UNDERCOVER #361, UNDERCOVER #366, DET.
COTY GREEN, DET. NELSON NIN, DET. FRED
DORCH, CAPT. STEVEN DIXSON, SGT. PAUL
O'CONNOR, and P.O.s  JOHN and JANE DOE #1-10,
individually and in their official capacities, (the names
John and Jane Doe being fictitious, as the true names are
presently unknown),

                                        Defendants.

------------------------------------------------------------------X

       Plaintiff YAJAIRA SAAVEDRA, by her attorney, ROSE M. WEBER, complaining of the defendants, respectfully alleges as follows:

## PRELIMINARY STATEMENT

       1.     Plaintiff brings this action for compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of her civil rights, as said rights are secured by said statutes and the Constitutions of the State of New York and the United States.   Plaintiff also asserts supplemental state law tort claims.

## JURISDICTION

       2.     This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988, and the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

       3.     Jurisdiction is founded upon 28 U.S.C. §§  1331, 1343, and 1367.

## VENUE

4. Venue is properly laid in the Southern District of New York under U.S.C. § 1391(b), in that this is the District in which the claim arose.

## JURY DEMAND

5. Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6. Plaintiff YAJAIRA SAAVEDRA is a Latina, a lawful resident of the United States, and at all relevant times a resident of the City and State of New York.

7. Defendant THE CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8. Defendant THE CITY OF NEW YORK maintains the New York City Police Department, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, City of New York.

9. That at all times hereinafter mentioned, the individually named defendants DET. EDGAR CLASES, DET. DONALD SEHL, SGT. ALBERTO GONZALEZ, UNDERCOVER #361, UNDERCOVER #366, DET. COTY GREEN, DET. NELSON NIN, DET. FRED DORCH, CAPT. STEVEN DIXSON, SGT. PAUL O'CONNOR, and P.O.s JOHN and JANE DOE #1-10 were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties.

10. That at all times hereinafter mentioned the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

11. Each and all of the acts of the defendants alleged herein were done by said defendants while acting within the scope of their employment by defendant THE CITY OF NEW YORK.

12. Each and all of the acts of the defendants alleged herein were done by said defendants while acting in furtherance of their employment by defendant THE CITY OF NEW YORK.

## INCIDENT FACTS

13. On January 11, 2019, at approximately 4:00 p.m., plaintiff YAJAIRA SAAVEDRA was lawfully present in La Morada, the restaurant that she and her family own, located at 308 Willis Avenue, in the County of Bronx, City and State of New York.

14. At aforesaid time and place, members of the New York City Police Department were unlawfully present in La Morada, conducting a narcotics surveillance operation without the knowledge or consent of plaintiff YAJAIRA SAAVEDRA or her family.

15. Plaintiff YAJAIRA SAAVEDRA exercised her First Amendment right to protest the presence of defendants in her restaurant.

16. In retaliation for plaintiff YAJAIRA SAAVEDRA exercising her constitutional rights, and in the absence of probable cause to believe that plaintiff had committed any crime, defendants handcuffed plaintiff and placed her under arrest.

17. Defendants deliberately handcuffed plaintiff YAJAIRA SAAVEDRA more tightly and violently than is authorized or required by proper NYPD procedure.

18. Plaintiff YAJAIRA SAAVEDRA advised defendants that the handcuffs were hurting her, but defendants did not loosen them.

19. As a result of the too-tight handcuffs, plaintiff YAJAIRA SAAVEDRA experienced pain, abrasions and bruising that lasted approximately two months, and neurological damage.

20. Defendants arrested plaintiff YAJAIRA SAAVEDRA despite their knowledge that they lacked probable cause to do so.

21. Defendants on the scene arrested plaintiff YAJAIRA SAAVEDRA after consultation with, and at the direction of, defendant CAPT. STEVEN DIXSON.

22. Defendants transported plaintiff YAJAIRA SAAVEDRA to the 40th Precinct of the New York City Police Department in the Bronx.

23. Plaintiff YAJAIRA SAAVEDRA was held and detained in custody for approximately three hours before being released from the precinct when her arrest was voided.

24. On January 14, 2019, plaintiff YAJAIRA SAAVEDRA held a press conference at La Morada to announce that she was that day filing a Notice of Claim in regard to her arrest.

25. Beginning on that date and continuing every day for the next two to three weeks, defendants retaliated against plaintiff YAJAIRA SAAVEDRA by stationing an NYPD vehicle outside the restaurant to harass, surveil, and intimidate plaintiff.

26. As a result of the foregoing, plaintiff YAJAIRA SAAVEDRA sustained, *inter alia*, physical injury, loss of liberty, emotional distress, embarrassment, and humiliation, damage to reputation, and deprivation of her constitutional rights.

## MONELL FACTS

27. Both before and after the arrest of plaintiff YAJAIRA SAAVEDRA, a custom and practice of lawlessness and corruption pervaded NYPD narcotics operations.

28. This custom and practice was first exposed in January of 2008, when four officers from Brooklyn South Narcotics were arrested and charged with criminal offenses.

29. In June 2011, Sgt. William Eiseman pled guilty to fabricating narcotics charges and admitted to training young officers to do the same (Melissa Grace, *NYPD Sgt. William Eiseman Pleads Guilty to Lying Under Oath in Plea Deal*, N.Y. Daily News, June 27, 2011).

30. The on-going custom and practice in making unlawful and fraudulent narcotics arrests was confirmed in October of 2011 in sworn testimony by former NYPD officer Steven Anderson.

31. On May 29, 2013, P.O. Isaias Alicea was convicted of ten felony counts of filing a false document and one misdemeanor count of official misconduct after falsely claiming that he saw two men conducting a drug deal in West Harlem.

32. In August 2013 former NYPD officer Genaro Morales testified that he and other members of her Bronx Narcotics team fabricated stories about narcotics possession and sale (Tara Palmeri & Kirstan Conley, *Cops Lied to Reach Arrest Quotas*, N.Y. Post, Oct. 14, 2013).

33. In 2015, SDNY Judge Engelmeyer suppressed narcotics evidence because of Bronx P.O. Luis Rios' perjury (Josh Saul, *Lying Cop Costs NYPD Big-Time Bust*, N.Y. Post, May 27, 2015).

34. In early 2017, Detectives Sasha Cordoba and Kevin Desormeau were indicted in Queens for lying about the circumstances of narcotics arrests.

35. In October 2017, EDNY Judge Weinstein permitted a *Monell* claim to go forward in a case alleging perjury by narcotics officers, noting that "A reasonable jury may find that this practice is not isolated to a few 'bad' police officers, but is endemic, that NYPD officials are aware this pattern exists and that they have failed to intervene and properly supervise." (*Cordero v. City of New York*, No. 15 CV 3436, 2017 WL 4685544, at *11 (E.D.N.Y. Oct. 17, 2017).)

36. Upon information and belief, because of the custom and practice of corruption and lawlessness by NYPD narcotics officers, approximately 400 criminal prosecutions had to be dismissed by the Queens County and Kings County District Attorney's Offices.

37. As a direct result of this custom and practice, defendants in the instant matter felt free to arrest plaintiff YAJAIRA SAAVEDRA without probable cause.

38. Both before and after the arrest of plaintiff YAJAIRA SAAVEDRA, NYPD officers were subject to "productivity goals" (i.e., arrest quotas).

39. The existence of the aforesaid custom and practice may be inferred from:

- NYPD Operations Order 52, issued in October 2011, mandating that police officers be evaluated on their activity numbers (including number of arrests) and that officers be disciplined if their numbers are too low; and requiring that NYPD managers set "performance goals" for "proactive enforcement activities" including "self-initiated arrests";

- the directive issued in 2002 by Deputy Chief Michael Marino setting quotas for summonses and arrests (Sean Gardiner, *NYPD Chief Set "Goals" for Officers*, Wall St. J., Mar. 22, 2013);

- the 2006 admission by Deputy Commissioner Paul J. Browne that commanders are permitted to set "productivity goals" (Kareem Fahim, *Police in Brooklyn Used Illegal Ticket Quotas, Arbitrator Decides*, N.Y. Times, Jan. 20, 2006);

- the 2010 admission by Deputy Commissioner Paul J. Browne that police officers are provided with "productivity goals" (*NYPD Officer Claims Pressure to Make Arrests*, http://abc7ny.com/archive/7305356/, Mar. 2, 2010);

- the information provided by whistle-blower police officer Adrian Schoolcraft documenting the existence of arrest quotas (Rocco Parascandola, *NYPD Whistleblower Adrian Schoolcraft Files for Retirement*, N.Y. Daily News, Dec. 4, 2015);

- the information provided by whistle-blower police officer Adil Polanco that commanders relentlessly pressure police officers to make more arrests (*NYPD Officer Claims Pressure to Make Arrests*, http://abc7ny.com/archive/7305356/, Mar. 2, 2010);

- the information provided by whistle-blower police officer Craig Matthews that police are forced to adhere to an illegal quota system, and that he was retaliated against for protesting the quotas (Graham Rayman, *Craig Matthews, Police Officer, Has her Quota Lawsuit Reinstated by Federal Appeals Court*, Village Voice, Nov. 29, 2012);

- audiotapes secretly recorded at the 81st Precinct in 2010, in which precinct commanders threatened police officers about what would happen if they did not meet arrest quotas (Graham Rayman, *The NYPD Tapes: Inside Bed-Stuy's 81st Precinct*, Village Voice, May 4, 2010);

- testimony by P.O. Bryan Rothwell at her departmental trial in January 2014 that police officers in her unit in Brooklyn were required to make at least two arrests per month (Rocco Parascandola, *Brooklyn Cop Testifies That He Was Expected to Make Two Arrests, Issue 20 Summonses Each Month*, N.Y. Daily News, Mar. 6, 2014);

- the facts set forth in the Second Amended Complaint in the class-action *Floyd v. City of New York*, 08 Civ. 1034 (SAS), all of which are incorporated herein, including allegations that NYPD's weekly CompStat meetings put pressure on police officers to engage in behaviors

designed to make them appear "productive" (¶ 114); and that NYPD maintains a de facto quota system requiring a certain number of arrests per month, with police officers facing adverse employment consequences for not meeting the quotas (¶ 125);

- Judge Scheindlin's Opinion & Order in *Floyd* dated August 12, 2013, finding *inter alia* that NYPD officers experienced significant pressure to increase their stop-and-frisk activity (p. 64), that senior NYPD officials routinely pressured commanders to increase enforcement activity, and that the pressure was passed down to the rank and file (p. 67-71); and that police officers may suffer adverse employment consequences for not engaging in enough "proactive enforcement activities," including arrests (p. 80);

- the facts set forth in the Complaints in the class-action *Stinson v. City of New York*, 10 Civ. 2248 (RWS), all of which are incorporated herein, including allegations that quota pressure forced police officers to issue bogus summonses and conduct unlawful stop-and-frisks (Graham Rayman, *NYPD Quotas Leading to Civil Rights Violations, New Lawsuit Says* , Village Voice, June 7, 2010);

- the facts set forth in the Complaints in the class-action *Raymond v. City of New York*, 15 Civ. 6885 (LTS), all of which are incorporated herein, including allegations by the twelve police officer plaintiffs that quotas "absolutely exist," that the burden falls predominantly upon minority neighborhoods, and that police officers who do not meet quotas are punished and subjected to retaliation (*NYPD Still Enforces Illegal Quota System, Minority Officers Allege in Lawsuit*, http://www.nbcnewyork.com/news/local/nypd-quotas-new-york-city-police-department-bill-bratton-edwin-raymond-370118201.html, Feb. 24, 2016);

- a full-page ad in the May 7, 2012 Daily News taken out by the Patrolmen's Benevolent Association, stating that in regard to quotas, "Don't Blame the Cop, Blame NYPD Management";

- testimony in August 2013 by former NYPD officer Genaro Morales that he and other members of her Bronx Narcotics team fabricated stories about narcotics possession and sale because of pressure to meet arrest quotas (Tara Palmeri & Kirstan Conley, *Cops Lied to Reach Arrest Quotas*, N.Y. Post, Oct. 14, 2013);

- the revelation in April 2015 by Anthony Miranda, chairman of the National Latino Officers Association, that anti-crime officers on Staten Island and elsewhere were forced to play a "quota game" in which getting insufficient points for making arrests resulted in adverse employment consequences (Thomas Tracy, *NYPD Accused of Giving Points to Staten Island Cops for Making Arrests to Hit Quota*, N.Y. Daily News, Apr. 1, 2015);

- statements by NYPD Inspector General Philip Eure in April 2015 that NYPD would be evaluating officers based in part upon the number of arrests made (Rocco Parascandola, *NYPD Inspector General Philip Eure Calls for Upgrade of Cop Performance Reviews, Recommends Data-Driven Approach*, N.Y. Daily News, Apr. 21, 2015);

- allegations in January 2016 by P.O. Michael Birch that he was targeted by supervisors for not making enough arrests of minority young people (John Marzulli, *NYPD Cop Claims He Was Punished for Not Stopping Enough Black, Hispanic Teens in Subway*, N.Y. Daily News, Jan. 7, 2016);

- allegations in November 2016 by former P.O. Brendan Cronin that unrelenting pressure to meet arrest quotas drove him to drink (Stephen Rex Brown, *Former NYPD Cop Blames Arrest*

*Quota Pressure for Drunken Shooting Frenzy That Nearly Killed a Man*, N.Y. Daily News, Nov. 25, 2016); and

- allegations in November 2016 by former P.O. Doreen Debattista that she got flak for not making enough arrests (Victoria Bekiempis, *Cop Slaps NYPD Supervisors With $5.5M Discrimination Suit After Allegedly Forcing Her Into Retirement Due To Gender, Age*, N.Y. Daily News, Nov. 23, 2016).

40. Upon information and belief, as a direct result of these quotas, defendants in the instant matter felt pressure to arrest plaintiff YAJAIRA SAAVEDRA without probable cause.

## FIRST CLAIM FOR RELIEF
### DEPRIVATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. § 1983

41. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "40" with the same force and effect as if fully set forth herein.

42. All of the aforementioned acts of defendants, their agents, servants and employees, were carried out under the color of state law.

43. All of the aforementioned acts deprived plaintiff YAJAIRA SAAVEDRA of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

44. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, with all of the actual and/or apparent authority attendant thereto.

45. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, pursuant to the customs, usages, practices,

procedures, and the rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

46. Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

## SECOND CLAIM FOR RELIEF
## FALSE ARREST UNDER 42 U.S.C. § 1983

47. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "46" with the same force and effect as if fully set forth herein.

48. As a result of the aforesaid conduct by defendants, plaintiff YAJAIRA SAAVEDRA was subjected to an illegal, improper and false arrest by the defendants and taken into custody and caused to be falsely imprisoned, detained, and confined, without any probable cause, privilege or consent.

49. As a result of the foregoing, plaintiff YAJAIRA SAAVEDRA's liberty was restricted for an extended period of time, she was put in fear for her safety, and she was humiliated, without probable cause.

## THIRD CLAIM FOR RELIEF
## EXCESSIVE FORCE UNDER 42 U.S.C. § 1983

50. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "49" with the same force and effect as if fully set forth herein.

51. The level of force employed by defendants was objectively unreasonable and in violation of plaintiff YAJAIRA SAAVEDRA's constitutional rights.

52. As a result of the aforementioned conduct of defendants, plaintiff YAJAIRA SAAVEDRA was subjected to excessive force and sustained physical injuries.

## FOURTH CLAIM FOR RELIEF
## FIRST AMENDMENT OF THE U.S. CONSTITUTION UNDER 42 U.S.C. § 1983

53. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "52" with the same force and effect as if fully set forth herein.

54. Plaintiff YAJAIRA SAAVEDRA had a constitutionally protected right, under the First Amendment, to protest the misbehavior of police officers.

55. The arrest, detention, and brutalization of plaintiff YAJAIRA SAAVEDRA were in retaliation for plaintiff's exercising her right to free speech.

56. The arrest, detention, and brutalization of plaintiff YAJAIRA SAAVEDRA were intended to, and did, chill plaintiff's right to free speech.

57. Defendants' unlawful surveillance, intimidation, and harassment of plaintiff YAJAIRA SAAVEDRA were in retaliation for plaintiff's exercising her right to free speech and for having filed a Notice of Claim.

58. Defendants' unlawful surveillance, intimidation, and harassment of plaintiff YAJAIRA SAAVEDRA were intended to, and did, chill plaintiff's right to free speech and to seek redress of grievances.

## FIFTH CLAIM FOR RELIEF
## FAILURE TO INTERVENE

59. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "58" with the same force and effect as if fully set forth herein.

60. Each and every individual defendant had an affirmative duty to intervene on plaintiff YAJAIRA SAAVEDRA's behalf to prevent the violation of her constitutional rights.

61. The individual defendants failed to intervene on plaintiff YAJAIRA SAAVEDRA's behalf to prevent the violation of her constitutional rights despite having had a realistic opportunity to do so.

62. As a result of the aforementioned conduct of the individual defendants, plaintiff's constitutional rights were violated.

## SIXTH CLAIM FOR RELIEF
## MUNICIPAL LIABILITY

63. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "62" with the same force and effect as if fully set forth herein.

64. Defendants arrested and incarcerated plaintiff YAJAIRA SAAVEDRA in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said arrest, incarceration, and prosecution would jeopardize plaintiff's liberty, well-being, safety and constitutional rights.

65. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

66. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

67. The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department include, but are not limited to, falsely arresting and/or using excessive force against individuals who are participating or are perceived to be participating in First Amendment activities.

68. The existence of the aforesaid custom and practice may be inferred from repeated occurrences of similar wrongful conduct, as documented in hundreds of claims arising from, *inter alia*, demonstrations in 2003 against the war in Iraq and in 2004 against the Republican

National Convention; Critical Mass bicycle rides; and activities connected with Occupy Wall Street.

69. The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department also include, but are not limited to, wrongfully arresting individuals during narcotics operations and arresting innocent persons in order to meet "productivity goals" (i.e., arrest quotas).

70. The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department constituted a deliberate indifference to the safety, well-being and constitutional rights of plaintiff YAJAIRA SAAVEDRA.

71. The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department were the direct and proximate cause of the constitutional violations suffered by plaintiff YAJAIRA SAAVEDRA as alleged herein.

72. The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department were the moving force behind the constitutional violations suffered by plaintiff YAJAIRA SAAVEDRA as alleged herein.

73. As a result of the foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department, plaintiff YAJAIRA SAAVEDRA was falsely arrested and incarcerated and subjected to excessive force.

74. Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating the constitutional rights of plaintiff YAJAIRA SAAVEDRA.

75.     Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers, and were directly responsible for the violation of plaintiff YAJAIRA SAAVEDRA's constitutional rights.

76.     All of the foregoing acts by defendants deprived plaintiff YAJAIRA SAAVEDRA of federally protected rights, including, but not limited to, the right:

        A.     Not to be deprived of liberty without due process of law;

        B.     To be free from seizure and arrest not based upon probable cause;

        C.     Not to have excessive force imposed upon her;

        D.     To free speech and to seek redress of grievances;

        E.     Not to have cruel and unusual punishment imposed upon her; and

        F.     To receive equal protection under the law.

77.     As a result of the foregoing, plaintiff is entitled to compensatory damages in the sum of two million dollars ($2,000,000.00) and is further entitled to punitive damages against the individual defendants in the sum of two million dollars ($2,000,000.00).

## PENDANT STATE CLAIMS

78.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "77" with the same force and effect as if fully set forth herein.

79.     On or about January 14, 2019, and within ninety (90) days after the claims herein accrued, plaintiff duly served upon, presented to and filed with the City of New York, a Notice of Claim setting forth all facts and information required under General Municipal Law § 50-e.

80.     The City of New York has wholly neglected or refused to make an adjustment or payment thereof and more than thirty (30) days have elapsed since the presentation of such claim

as aforesaid.

81. The City of New York demanded a hearing pursuant to General Municipal Law § 50-h and said hearing was conducted on March 20, 2019.

82. This action was commenced within one (1) year and ninety (90) days after the cause of action herein accrued.

83. Plaintiff has complied with all conditions precedent to maintaining the instant action.

84. This action falls within one or more of the exceptions as outlined in C.P.L.R. § 1602.

## FIRST CLAIM FOR RELIEF UNDER N.Y. STATE LAW
## FALSE ARREST

85. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "84" with the same force and effect as if fully set forth herein.

86. Defendant police officers arrested plaintiff YAJAIRA SAAVEDRA in the absence of probable cause and without a warrant.

87. As a result of the aforesaid conduct by defendants, plaintiff YAJAIRA SAAVEDRA was subjected to an illegal, improper and false arrest by the defendants and taken into custody and caused to be falsely imprisoned, detained, confined, and incarcerated by the defendants.

88. The aforesaid actions by the defendants constituted a deprivation of plaintiff YAJAIRA SAAVEDRA's rights.

## SECOND CLAIM FOR RELIEF UNDER N.Y. STATE LAW
## FALSE IMPRISONMENT

89. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "88" with the same force and effect as if fully set forth herein.

90. As a result of the foregoing, plaintiff YAJAIRA SAAVEDRA was falsely imprisoned, her liberty was restricted for an extended period of time, she was put in fear for her safety, and she was humiliated and subjected to handcuffing and other physical restraints.

91. Plaintiff YAJAIRA SAAVEDRA was conscious of said confinement and did not consent to same.

92. The confinement of plaintiff YAJAIRA SAAVEDRA was without probable cause and was not otherwise privileged.

93. As a result of the aforementioned conduct, plaintiff YAJAIRA SAAVEDRA has suffered physical and mental injury, together with embarrassment, humiliation, shock, fright and loss of freedom.

### THIRD CLAIM FOR RELIEF UNDER N.Y. STATE LAW
### ASSAULT

94. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "93" with the same force and effect as if fully set forth herein.

95. Defendants' aforementioned actions placed plaintiff YAJAIRA SAAVEDRA in apprehension of imminent harmful and offensive bodily contact.

96. As a result of defendants' conduct, plaintiff YAJAIRA SAAVEDRA has suffered physical pain and mental anguish, together with shock, fright, apprehension, embarrassment, and humiliation.

### FOURTH CLAIM FOR RELIEF UNDER N.Y. STATE LAW
### BATTERY

97. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "96" with the same force and effect as if fully set forth herein.

98. Defendant police officers touched plaintiff YAJAIRA SAAVEDRA in a harmful and offensive manner.

99. Defendant police officers did so without privilege or consent from plaintiff YAJAIRA SAAVEDRA.

100. As a result of defendants' conduct, plaintiff YAJAIRA SAAVEDRA has suffered physical pain and mental anguish, together with shock, fright, apprehension, embarrassment and humiliation.

### FIFTH CLAIM FOR RELIEF UNDER N.Y. STATE LAW
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

101. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "100" with the same force and effect as if fully set forth herein.

102. The aforementioned conduct was extreme and outrageous, and exceeded all reasonable bounds of decency.

103. The aforementioned conduct was committed by all of the individual defendants while acting within the scope of their employment.

104. The aforementioned conduct was committed by all of the individual defendants while acting in furtherance of their employment.

105. The aforementioned conduct was intentional and done for the sole purpose of causing severe emotional distress to plaintiff YAJAIRA SAAVEDRA.

106. As a result of the aforementioned conduct, plaintiff YAJAIRA SAAVEDRA suffered physical injury and severe emotional distress and mental injury, together with embarrassment, humiliation, shock, fright and loss of freedom.

### SIXTH CLAIM FOR RELIEF UNDER N.Y. STATE LAW
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

107. Plaintiff repeats, reiterates and realleges each and every allegation contained in

paragraphs numbered "1" through "106" with the same force and effect as if fully set forth herein.

108. The aforementioned conduct was extreme and outrageous, and exceeded all reasonable bounds of decency.

109. The aforementioned conduct was negligent and caused severe emotional distress to plaintiff YAJAIRA SAAVEDRA.

110. The aforementioned conduct was committed by all of the individual defendants while acting within the scope of their employment.

111. The aforementioned conduct was committed by all of the individual defendants while acting in furtherance of their employment.

112. As a result of the aforementioned conduct, plaintiff YAJAIRA SAAVEDRA suffered physical injury and severe emotional distress and mental injury, together with embarrassment, humiliation, shock, fright and loss of freedom.

### SEVENTH CLAIM FOR RELIEF UNDER N.Y. STATE LAW
### NEGLIGENT HIRING AND RETENTION

113. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "112" with the same force and effect as if fully set forth herein.

114. Upon information and belief, defendant City of New York failed to use reasonable care in the hiring and retention of the aforesaid defendants who conducted and participated in the arrest of plaintiff YAJAIRA SAAVEDRA.

115. Defendant City of New York knew, or should have known in the exercise of reasonable care, the propensities of the defendants DET. EDGAR CLASES, DET. DONALD SEHL, SGT. ALBERTO GONZALEZ, UNDERCOVER #361, UNDERCOVER #366, DET.

COTY GREEN, DET. NELSON NIN, DET. FRED DORCH, CAPT. STEVEN DIXSON, SGT. PAUL O'CONNOR, and P.O.s JOHN and JANE DOE #1-10 to engage in the wrongful conduct heretofore alleged in this Complaint.

### EIGHTH CLAIM FOR RELIEF UNDER N.Y. STATE LAW
### NEGLIGENT TRAINING AND SUPERVISION

116. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "115" with the same force and effect as if fully set forth herein.

117. Upon information and belief defendant City of New York failed to use reasonable care in the training and supervision of the aforesaid defendants who conducted and participated in the arrest of plaintiff YAJAIRA SAAVEDRA.

118. As a result of the foregoing, plaintiff is entitled to compensatory damages in the sum of two million dollars ($2,000,000.00) and is further entitled to punitive damages against the individual defendants in the sum of two million dollars ($2,000,000.00).

**WHEREFORE**, plaintiff YAJAIRA SAAVEDRA demands judgment in the sum of two million dollars ($2,000,000.00) in compensatory damages and two million dollars ($2,000,000.00) in punitive damages, plus reasonable attorney's fees, costs, and disbursements of this action.

Dated:     New York, New York
           March 30, 2021

                                              /s
                                              ROSE M. WEBER (RW 0515)
                                              30 Vesey Street, Suite 1801
                                              New York, NY 10007
                                              (917) 415-5363